Glenn W. TURNER, Individually, et al.

v.

William J. BAXLEY, Attorney General, Individually and in his capacity as Attorney General, et al.

Civ. A. No. 6636.

United States District Court, D. Vermont.

Dec. 30, 1972.

John A. Burgess, John M. Kilmurry, Burgess & Kilmurry, Montpelier, Vt., Theodore I. Koskoff, Bridgeport, Conn., for plaintiffs.

George L. Beck, Jr., Deputy Atty. Gen., Montgomery, Ala., for William J. Baxley, Atty. Gen. of Ala.

Jimmy D. Patton, Asst. Atty. Gen., Little Rock, Ark., for Ray Thornton, Atty. Gen. of Ark.

Thomas K. McGuire, Deputy Atty. Gen., Dept. of Justice, Sacramento, Cal., for Evelle J. Younger, Atty. Gen. of Cal.

Daniel R. Schaefer, Asst. Atty. Gen., Hartford, Conn., for Robert K. Killian, Atty. Gen. of Conn.

Mason E. Turner, Jr., Deputy Atty. Gen., Dover, Del., for W. Laird Stabler, Atty. Gen. of Del.

Richard Greener, Deputy Atty. Gen., Boise, Idaho, for W. Anthony Park, Atty. Gen. of Idaho.

Robert S. Atkins and Howard R. Kaufman, Asst. Attys. Gen., Chicago, Ill., for William J. Scott, Atty. Gen. of Ill.

Edward W. Johnson, Deputy Atty. Gen., Indianapolis, Ind., for Theodore L. Sendak, Atty. Gen. of Ind.

Douglas R. Carlson, Asst. Atty. Gen., Des Moines, Iowa, for Richard C. Turner, Atty. Gen. of Iowa.

Lance W. Burr, Asst. Atty. Gen., Topeka, Kan., for Vern Miller, Atty. Gen. of Kan.

John E. Quinn, Asst. Atty. Gen., Consumer Protection Div., Augusta, Me., for James S. Erwin, Atty. Gen. of Me.

David S. Nelson, Asst. Atty. Gen., Consumer Protection Div., Boston, Mass., for Robert H. Quinn, Atty. Gen. of Mass.

Stewart H. Freeman, Asst. Sol. Gen., Lansing, Mich., for Frank J. Kelley, Atty. Gen. of Mich.

Harvey M. Tettlebaum, Asst. Atty. Gen., Jefferson City, Mo., for John C. Danforth, Atty. Gen. of Mo.

Richard A. Hampe, Asst. Atty. Gen., Concord, N. H., for Warren B. Rudman, Atty. Gen. of N. H.

Richard Grieves, Deputy Atty. Gen., Dept. of Law and Public Safety, Div. of Law, Newark, N. J., for George F. Kugler, Jr., Atty. Gen. of N. J.

Joel Lewittes, Asst. Atty. Gen., New York City, for Louis J. Lefkowitz, Atty. Gen. of N. Y.

Donald A. Davis, Associate Atty. Gen., Dept. of Justice, Raleigh, N. C., for Robert B. Morgan, Atty. Gen. of N. C.

Wick, Dinse & Allen, Burlington, Vt., and W. Michael Gillette, Chief Counsel, Dept. of Justice, Consumer Protection Div., Portland, Or., for Lee Johnson, Atty. Gen. of Or.

Joel Weisberg, Deputy Atty. Gen., Harrisburg, Pa., for J. Shane Creamer, Atty. Gen. of Pa.

Van Thompson, Jr., Asst. Atty. Gen., Antitrust and Consumer Protection Div., Austin, Tex., for Crawford C. Martin, Atty. Gen. of Tex.

Martin K. Miller, Asst. Atty. Gen., Montpelier, Vt., and Paul, Frank & Collins, Burlington, Vt., for James M. Jeffords, Atty. Gen. of Vt., Howard Goldberg and State of Vermont.

Vann H. Lefcoe, Asst. Atty. Gen., Richmond, Va., for Andrew P. Miller, Atty. Gen. of Va.

Joseph S. Montecucco, Asst. Atty. Gen., Temple of Justice, Olympia, Wash., for Slade Gorton, Atty. Gen. of Wash.

Chauncey H. Browning, Jr., Atty. Gen. of West Va., pro se.

Bruce A. Craig, Asst. Atty. Gen., Madison, Wis., for Robert W. Warren, Atty. Gen. of Wis.

Paterson, Gibson, Noble & Brownell, Montpelier, Vt., and Thomas A. Shaw, Jr., Breed, Abbott & Morgan, New York City, for Council of Better Business Bureaus, Inc.

James A. Laurenson, Deputy Atty. Gen., Columbus, Ohio, for William J. Brown, Atty. Gen. of Ohio.

## OPINION AND ORDER

HOLDEN, Chief Judge.

Koscot Interplanetary, Inc., and Dare To Be Great, Inc., are corporations organized under the laws of the State of Florida. Turner is the principal stockholder in each corporation. The defendants are the Attorney General of Vermont and the Attorneys General of twenty-five other states, the Assistant Attorney General of the State of Vermont, the State of Vermont and the Council of Better Business Bureaus, Inc., a corporation existing under the laws of the District of Columbia. On September 6, 1972, the plaintiffs moved to join the Attorney General of Ohio as an additional party defendant. The plaintiffs request compensatory and punitive damages in excess of five hundred (500) million dollars.

The complaint is long and interrelated, but may be separated into three dis-

tinct parts. In Counts I, II and III, the plaintiffs complain against the State of Vermont, its Attorney General, James M. Jeffords, and his assistant, Howard Goldberg. They allege that Attorney General Jeffords has promulgated a regulation which deprives the plaintiffs of certain constitutional rights. The promulgation is alleged to be an overt act in furtherance of the conspiracy claimed in subsequent counts. It is further alleged that Jeffords and Goldberg have maliciously prosecuted plaintiffs and published news releases intending to deprive plaintiffs of certain constitutional rights.

Counts IV and V are directed against the Attorneys General of the twenty-six states and allege a conspiracy to violate certain civil rights of the plaintiffs in violation of 42 U.S.C. § 1985.

Counts VI through X add, as a party defendant to the Attorneys General, the Council of Better Business Bureaus, Inc. The plaintiffs allege that the defendants jointly and severally, alone and in concert, acted to injure plaintiffs' business and their products.

On August 17, 1972, the Court issued Pretrial Order No. 1 which stayed all pending discovery procedure and established a date for a preliminary pretrial conference. This conference was held on September 26 and 27, 1972, with all parties present or represented by counsel. A hearing was held on the Motions to Quash, to Dismiss and to Strike, filed by counsel on behalf of twenty-one Attorney General defendants, and joined in by counsel for the remaining defendants. A pretrial order was issued which incorporates the plaintiffs' withdrawal of their requests for a class action and for the convening of a three-judge court to consider the statutes and regulations of states other than Vermont.

Further hearings were held on November 17, 1972, on questions which relate particularly to the three Vermont defendants and the Council of Better Business Bureaus, Inc. At this hearing the plaintiffs withdrew and undertook to waive their request to convene a three-judge court to determine the constitutionality of 9 V.S.A. § 2453 and Consumer Protection Regulation 1–A.[1]

1. 9 V.S.A. § 2453 provides:

(a) Unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are hereby declared unlawful.

(b) It is the intent of the legislature that in construing subsection (a) of this section, the courts of this state will be guided by the construction of similar terms contained in section 5(a)(1) of the federal trade commission act as from time to time amended by the federal trade commission and the courts of the United States.

(c) The attorney general shall make rules and regulations relating to unfair methods of competition in commerce and unfair or deceptive acts or practices in commerce. The rules and regulations shall not be inconsistent with the rules, regulations and decisions of the federal trade commission and the federal courts interpreting the Federal Trade Commission Act.

(d) Violation of a rule or regulation as made by the attorney general is prima facie proof of the commission of an unfair or deceptive act in commerce.

(e) The provisions of subsections (a), (c) and (d) shall also be applicable to real estate transactions.

CF 100.01 *Unfair Trade Practice.*

The promotional use of a chain distributor scheme in connection with the solicitation of investments from members of the public is an unfair trade practice under 9 V.S.A. Section 2453(a). When so used the scheme serves as a lure *to improvident and uneconomical investment.* Many individuals lack commercial expertise and anticipate unrealistic profits or *economic gain through use of the chance to further perpetuate a chain of distributors, without regard to actual market conditions affecting further distribution and sale of the property purchased by them or its market acceptance by final users or consumers.* Substantial economic losses to participating distributors have occurred and will inevitably occur by reason of their reliance on perpetuation of the chain distributor scheme as a source of profit.

CF 100.02 *Definitions.*

(1) "Chain distributor scheme" is a sales device whereby a person, upon a condition that he make an investment, is

While the constitutionality of a statute may be determined by a single judge, injunctive relief against its operation and enforcement may be granted only by a court composed of three judges. 28 U.S.C. § 2281. This mandate of the statute affects jurisdiction and the requirement is not subject to waiver by the parties. Riss & Co. v. Hoch, 99 F.2d 553 (10th Cir. 1938). Since the plaintiffs' statement in oral argument did not relinquish the prayer for injunctive relief, it appears that the waiver undertaken at that time was incomplete or improvidently stated. Absent a written stipulation to this effect, as then indicated, the Court considers the proposed waiver ineffectual or withdrawn.

### Counts I through III

Returning to Count I, more specifically, the plaintiffs allege that Attorney General Jeffords, acting both individually and officially and under color of state law, promulgated a certain regulation which prohibits, but does not regulate, the business activities, right to transact business and right to contract in violation of the United States Constitution. They request the convening of a three-judge district court, temporary and permanent injunctions against the enforcement of the regulation and seek declaratory relief. They also claim monetary damages.

Counts II and III allege that Jeffords and his assistant, Goldberg, acting under color of and pursuant to state law, selec-

tively and maliciously prosecuted plaintiffs and issued public statements intending to influence potential jurors and to injure plaintiffs by curtailing their right to transact business. The plaintiffs request temporary and permanent injunctive relief restraining defendants from proceeding with any actions against the plaintiffs and monetary damages.

### The State of Vermont

The controlling question in the complaint against the State of Vermont alleged in Counts I, II and III is whether this defendant is immune from suit. Clearly the State of Vermont is not to be considered a "person" within the scope of an action based on 42 U.S.C. § 1981 et seq. Zuckerman v Appellate Division, 421 F.2d 625, 626 (2d Cir. 1970); United States ex rel. Gittlemacker v. County of Philadelphia, 413 F.2d 84, 86 (3rd Cir. 1969), cert. denied 396 U.S. 1046, 90 S.Ct. 696, 24 L.Ed.2d 691 (1970); Harty v. Rockefeller, 338 F. Supp. 367, 368 (S.D.N.Y.1972). See also, Monroe v. Pape, 365 U.S. 167, 191, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

Unless the State of Vermont has waived its sovereign immunity, the Eleventh Amendment to the United States Constitution prevents the exercise of judicial power against this defendant. Absent such a waiver, this Court is without jurisdiction to hear that aspect of the complaint which is asserted against the State of Vermont. Ford Motor Co. v. Department of Treasury of Indiana, 323 U.S. 459, 465, 65 S.Ct. 347,

granted a license or right to solicit or recruit for profit or economic gain one or more additional persons who also are granted such license or right upon condition of making an investment and may further perpetuate the chain of persons who are granted such license or right upon such condition. A limitation as to the number of persons who may participate, or the presence of additional conditions affecting eligibility for the above license or right to recruit or solicit or the receipt of profits therefrom, does not change the identity of the scheme as a chain distributor scheme.

(2) "[I]nvestment" is any acquisition, for a consideration other than personal services, of property, tangible or intangible, and includes, without limitations, franchises, business opportunities and services. It does not include sales demonstration equipment and materials furnished at cost for use in making sales and not for resale.

(3) "Person" includes individuals, partnerships, corporations and associations. CF 100.03 *Prohibition.*

No person shall promote, offer or grant participation in a chain distributor scheme.

89 L.Ed. 389 (1945). The waiver of sovereign immunity provided in 12 V.S.A. §§ 5601–5605 specifically excludes any claim founded upon an act or omission of an employee of the state in the execution of a statute or regulation, whether or not such statute or regulation is valid or invalid. The statute proscribes the waiver by limiting jurisdiction to the county courts of Vermont.[2] Waiver and consent have been withheld from the State to action against the State in the federal courts. Kennecott Copper Corp. v. Tax Commission, 327 U.S. 573, 579, 66 S.Ct. 745, 90 L.Ed. 862 (1946); Ford Motor Co. v. Department of Treasury of Indiana, supra.

■ The complaint also fails to bring the action against Vermont within the waiver provisions of 29 V.S.A. § 1403. Lewis v. State of Vermont, 289 F.Supp. 246, 248 (D.Vt.1968); Miller v. State of Vermont, 201 F.Supp. 930, 933 (D.Vt. 1962). Absent an effective waiver of sovereign immunity, no jurisdiction resides in this court to entertain the action against the State of Vermont. This aspect of the complaint is dismissed.

### Requested Injunctive Relief

In Count I plaintiffs request temporary and permanent injunctive relief against the remaining defendants Jeffords and Goldberg. They seek to restrain these officers from enforcing Consumer Protection Regulation 1–A. They further request a declaration that the regulation is void on its face as applied to the plaintiffs. In Counts II and III plaintiffs request temporary and permanent injunctions against the prosecution of plaintiffs. They also seek monetary damages from defendants Jeffords and Goldberg. The defendants contend that no injunctive relief should be granted because of the existence of a contemporaneous prior state court action against three of the plaintiffs. This action is now pending in the Chittenden County Court of the State of Vermont, Docket No. C126–71Cnc. On October 24, 1972, the Chittenden County Court entered a default judgment enjoining those defendants from engaging in certain acts which the court found to be in violation of the Vermont Consumer Fraud Law.[3] Although the plaintiffs defaulted and the cause has gone to a final decree, the injunctive relief imposed by the state court against the plaintiffs and their business operations appears to be presently operating and in full force and effect.

■■ It is essential to the convening of a three-judge district court under 28 U.S.C. § 2281, that the complaint state a substantial claim for injunctive relief, otherwise a single district judge must dismiss the complaint. California Water Service Co. v. Redding, 304 U.S. 252,

---

2. 12 V.S.A. § 5601 provides:

The state of Vermont shall be liable for injury to persons or property or loss of life caused by the negligent or wrongful act or omission of an employee of the state while acting within the scope of his office or employment after October 1, 1961, under the same circumstances, in the same manner and to the same extent as a private person would be liable to the claimant except that the claimant shall not have the right to levy execution on any property of the state to satisfy any judgment. The county courts of the state shall have exclusive jurisdiction of any actions brought hereunder. The maximum liability of the State of Vermont hereunder shall be $75,000.00 to any one person and $300,000.00 to all persons arising out of each negligent or wrongful act or omission. If the claimant is not a resident of the State of Vermont, he may bring suit under this section in any county court in the state. The agent for the service of process under this statute shall be the attorney general or his duly authorized representative. This act shall not be construed so as to allow any insurance carrier to bring action or recover against the state for any payments made as a result of any private insurance contract between the carrier and a state employee.

3. "FINAL JUDGMENT"—State of Vermont v. Dare To Be Great et al., Chittenden County Court, Docket No. C126–71Cnc (Defendant's Exhibit A—attached as appendix).

255, 58 S.Ct. 865, 82 L.Ed. 1323 (1938); Century Arms, Inc. v. Kennedy, 323 F. Supp. 1002, 1013–1014 (D.Vt.), aff'd per curiam, 449 F.2d 1306 (2d Cir. 1971), cert. denied, 405 U.S. 1065, 92 S.Ct. 1494, 31 L.Ed.2d 794 (1972). Insubstantiality of the claim may appear because of the absence of a question upon a substantive provision of the Federal Constitution. See, e. g., Swift & Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965). Substantive merit may be wanting in the constitutional claim itself. California Water Service Co. v. Redding, 304 U.S. 252, 58 S.Ct. 865, 82 L.Ed. 1323 (1938). And it has been strongly suggested that even if the constitutional claim is well founded, the application to convene the special statutory court should be denied if the request for injunctive relief is otherwise unavailable. Utica Mutual Insurance Co. v. Vincent, 375 F.2d 129, 135 n. 7 (2d Cir.), cert. denied, 389 U.S. 839, 88 S.Ct. 63, 19 L.Ed.2d 102 (1967).

This requirement has been recently applied in the dismissal of a complaint where injunctive relief was not available due to the existence of a prior state criminal action. Hendricks v. Hogan, 324 F.Supp. 1277, 1281 (S.D.N.Y.1971). This concept of § 2284 has been applied in a request relating to the reapportionment of the Maryland General Assembly. Maryland Citizens for a Representative General Assembly v. Governor of Maryland, 429 F.2d 606 (4th Cir. 1970). It applies to the request stated in the present complaint.

■ In Mitchum v. Foster, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972), the Court was faced with an appeal of a decision from a three-judge court that no injunctive relief is available in a civil rights action when there is a prior pending state court proceeding.[4] The state proceeding involved was an action to abate a nuisance under Florida law, a non-criminal action. The Supreme Court held that a District Court under certain circumstances was not totally without jurisdiction in a § 1983 action to enjoin a proceeding pending in a state court. The Court's opinion reaffirmed the doctrine that principles of equity, comity and federalism similar to those involved in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), must restrain a federal court when asked to enjoin a state criminal proceeding. Mitchum v. Foster, supra, 407 U.S. at 243, 92 S.Ct. at 2163. In concurrence, Chief Justice Burger indicated that a federal court asked to enjoin a state civil proceeding should "consider whether general notions of equity or principles of federalism, similar to those invoked in *Younger*" prevent the issuance of an injunction in a "nuisance abatement proceeding . . . ."

■ Proceedings under the Vermont Consumers Fraud Act are designed to protect the people of Vermont from fraudulent practices. It provides for a "civil penalty" of not more than $10,000 for each violation, as well as injunctive relief. In some aspects it provides for civil remedies and sanctions to conduct proscribed by a related criminal statute against fraudulent promotional schemes.[5] And a grant of the plaintiffs' prayer for injunctive relief against the

4. 28 U.S.C. § 2283 provides that "(a) court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

5. 13 V.S.A. § 2005 provides:

A person, firm, corporation or association, or an agent or employee thereof, who, with intent to sell or dispose of merchandise, real estate, securities or service or to induce the public to enter into any obligations relating thereto, shall knowingly make, publish, circulate or place before the public, in a newspaper, magazine or other publication or in form of a book, notice, circular, pamphlet, letter, handbill, poster, bill, sign, placard, card, label or tag, an advertisement or statement regarding merchandise, real estate, securities or service, which advertisement or statement shall contain anything untrue, deceptive or misleading, shall be fined not more than $1,000.00.

defendants named in the initial counts would frustrate and obstruct the defendants from performing their statutory duties as prosecuting officers. It would restrict the enforcement of penal statutes they are sworn to uphold. Beyond that, injunctive relief would enjoin the enforcement of the state court injunction and decision against these plaintiffs. In this context, the principles of *Younger* will be applied.

In *Younger* the Supreme Court emphasized "the fundamental policy against federal interference with state criminal prosecutions." 401 U.S. at 46, 91 S.Ct. at 751. And the Court held "that the possible unconstitutionality of a statute 'on its face' does not in itself justify an injunction against good-faith attempts to enforce it." 401 U.S. at 54, 91 S.Ct. at 755. It must be shown that there will be irreparable injury, both great and immediate, from a threat to the plaintiffs' federally protected rights that cannot be eliminated by his defense against a single prosecution. Alternatively, there must be a showing that the state law involved is flagrantly and patently violative of express constitutional prohibitions, or evidence of bad faith, harassment of repeated prosecutions or other unusual circumstances, such as prosecutions without hope of any valid convictions. 401 U.S. at 46, 53, 54, 91 S.Ct. 746.

The plaintiffs' rights could have been protected by defense to the state action. There has been no showing of bad faith, harassment or other circumsances. Lastly, there is no showing that the state statute or regulation is a flagrant and patent violation of express constitutional prohibitions.

The plaintiffs' request to enjoin the Attorney General of Vermont and his deputy from enforcing the statutes of Vermont, designed to protect its citizens against consumer fraud, is at war with a national policy which forbids injunctive relief against state action within the precept of Younger v. Harris. It appears that since injunctive relief is unavailable, the application to convene a three-judge court, pursuant to 28 U.S.C. § 2284, is denied.

█ The request for declaratory relief in Count I should be judged by the same standards as the request for injunctive relief. Where an injunction would be impermissible, declaratory relief should ordinarily be denied. Samuels v. Mackell, 401 U.S. 66, 69–73, 91 S. Ct. 764, 27 L.Ed.2d 688 (1971); Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 301–302, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943). Therefore, the request to declare Consumer Fraud Regulation 1–A void "on its face," as applied to the plaintiffs, is denied.

### Jeffords and Goldberg

█ Dismissal of the request for injunctive relief does not necessarily mean that defendants Jeffords and Goldberg are not liable for damages. Unless they are immune from suit, damages may be recoverable. Generally, state officials may ·be immune from suit under two separate theories. While it is permissible to sue state officials to enjoin them from unconstitutional action, Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L. Ed. 714 (1908), the Supreme Court has never extended authorization to permit the recovery of monetary damages for acts within the scope and course of carrying out their official duties. See, e. g., Holmes v. Eddy, 341 F.2d 477 (4th Cir.), cert. denied, 382 U.S. 892, 86 S.Ct. 185, 15 L.Ed.2d 149 (1965).

█ Immunity protects state judicial and legislative officers from acts within the scope of their authority. Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951). And the reason for the protection of judges applies with equivalent protection to a public prosecutor in performing the duties which the law imposes upon his office. Yaselli v. Goff, 12 F.2d 396, 406–407 (2d Cir. 1926), aff'd per curiam, 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395 (1927); Dacey

v. New York County Lawyers Association, 423 F.2d 188, 192 (2d Cir. 1969), cert. denied, 398 U.S. 929, 90 S.Ct. 1819, 26 L.Ed.2d 92 (1970); Scolnick v. Lefkowitz, 329 F.2d 716, 717 (2d Cir.), cert. denied 379 U.S. 825, 85 S.Ct. 49, 13 L.Ed.2d 35 (1964).

■ For similar reasons, a state official is immune from suit if the action against him is in reality an action against the state he served. Kennecott Copper Corp. v. State Tax Commission, supra, 327 U.S. at 576, 66 S.Ct. 745; Bennett v. Gravelle, 323 F.Supp. 203, 211 (D.Md.), aff'd 451 F.2d 1011, 1012 (4th Cir. 1971); Westberry v. Fisher, 309 F.Supp. 12, 18 (S.D.Me.1970).

Count I requests damages for the publication of the alleged unconstitutional regulation. While Goldberg is named as a defendant in the count, none of the allegations pertain to him. For this reason, Count I is dismissed as to defendant Goldberg. As to defendant Jeffords, examination of the Vermont law is required.

■ Chapter 63 of Title 9, Vermont Statutes Annotated, contains the Consumer Fraud provisions of the State of Vermont. Under 9 V.S.A. § 2453(c), the Attorney General is mandated to "make rules and regulations relating to unfair methods of competition in commerce and unfair or deceptive acts or practices in commerce." These methods, acts and practices have been declared unlawful under 9 V.S.A. § 2453(a). The rules and regulations made by the Attorney General must be consistent with the rules, regulations and decisions interpreting the Federal Trade Commission Act.

■ Under 9 V.S.A. § 2453(d) a "violation of a rule or regulation as made by the attorney general is prima facie proof of the commission of an unfair or deceptive act in commerce." Pursuant to this mandate, Attorney General Jeffords published Consumer Protection 1–A. Promulgation of the regulation was an official act done by legislative delegation and directive. In this function, the Attorney General was privileged and immune from suit for damages allegedly incurred by the plaintiffs by the application of the state statute and regulation. Count I is dismissed in its entirety.

Counts II and III allege certain acts of Jeffords and Goldberg made "under color of and pursuant to the laws of the State of Vermont, to wit, 9 V.S.A. Chapter 63 and 3 V.S.A. Chapter 7 [the Attorney General's duties and powers] and under the custom and usage of the laws of the State of Vermont." The acts alleged are selective and repeated malicious prosecution of plaintiffs and the promulgation of news releases designed to deprive the plaintiffs of fair and impartial trials by jury and their right to transact business in interstate commerce. Both counts complain of acts made by officials in furtherance of their governmental functions as public prosecutors. As appears in dealing with Count I, the immunity of prosecutors has long been recognized in both federal and state domains. Yasselli v. Goff, supra, 12 F.2d at 406; Scolnick v. Lefkowitz, supra, 329 F.2d at 716. Plaintiffs have not alleged sufficient facts which, if taken to be true, would divest Jeffords and Goldberg of the mantle of immunity. Counts II and III are, therefore, dismissed.

*Counts IV–V*

Count IV alleges that the twenty-six Attorneys General held meetings in Phoenix, Arizona, and in Puerto Rico. It is said that a primary purpose of these meetings was the formation of a conspiracy to disseminate information in the communications media for the purpose of influencing judges and grand and petit juries. A further purpose of these meetings is said to have been the formation of a conspiracy to prevent plaintiffs from contracting in interstate commerce. The plaintiffs ask that a three-judge panel be convened, that a temporary injunction be issued restraining the defendants from proceeding with civil and criminal actions against the plaintiffs,

that damages of $51,000,000 be awarded to the plaintiffs, and that a declaration of the rights of the parties be made by the court.

Count V repeats the allegations of Count IV that the twenty-six Attorneys General conspired against the plaintiffs at meetings in Arizona and Puerto Rico. It further alleges that the defendants are currently entering into agreements and doing overt acts to deprive the plaintiffs, without due process, of their rights "to be free of conspiracies which are contrary to 42 U.S.C. § 1985 and § 1986"; "to make prospective contracts and garner a profit therefrom in interstate commerce"; "to be free from vexatious litigation"; and to conduct business in interstate commerce free from defamation of their "product" and their "business integrity." The plaintiffs in Count V request temporary and permanent injunctive relief, a declaration of rights and damages of $1,000,000.

In invoking this court's jurisdiction, Counts IV and V each rely on 42 U.S.C. §§ 1985(2), 1985(3) and 1986, which make punishable certain conspiratorial acts in interference with civil rights, and on 28 U.S.C. § 2201, the Declaratory Judgment Act. The Declaratory Judgment Act does not supply an independent ground of jurisdiction. It merely empowers the district court to grant declaratory relief where it has jurisdiction of the action on some other basis. Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950); R. E. D. M. Corp. v. Lo Secco, 291 F.Supp. 53 (S.D.N.Y. 1968), aff'd 412 F.2d 303 (1969). Thus the jurisdictional inquiry with respect to Counts IV and V must center on 42 U.S.C. §§ 1985(2), 1985(3) and 1986.

Section 1986 of Title 42 provides a cause of action against persons with knowledge of a § 1985 conspiracy who fail to act to prevent the conspiracy from doing harm. Thus an action under this section can lie only if Counts IV and V allege the existence of a conspiracy prohibited by § 1985. No facts are alleged to support an action under § 1985(2), relating to conspiracies to intimidate parties, witnesses or jurors. Thus the plaintiffs rely for jurisdictional purposes on 42 U.S.C. § 1985(3), which reaches conspiracies under color of state law to deprive a person of "the equal protection of the laws." This reliance is misplaced.

Section 1985(3) provides a cause of action only where a conspiracy is directed against a person as a member of a class. Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S.Ct. 1970, 29 L.Ed.2d 338 (1970); Kletschka v. Driver, 411 F.2d 436, 447 (2d Cir. 1969); Birnbaum v. Trussell, 371 F.2d 672 (2d Cir. 1966). Section 1985(3) does not provide a cause of action where the alleged conspiracy is directed toward an individual personally. As Judge Lumbard wrote when this issue arose in Kletschka v. Driver, supra:

> Plaintiff does rely on his claim under 1985(3), which reaches conspiracies under color of State law to deprive a person of "the equal protection of the laws." But whatever other rights plaintiff may have been deprived of equal protection is not one of them. The actions taken by defendants were directed only against plaintiff as an individual and not because he was a veteran, or a member of some class or race. A violation of equal protection would be shown if the actions against plaintiff were part of a general pattern of discrimination, or were based on impermissible considerations of race or class, but plaintiff has not raised a genuine issue of fact concerning such discrimination. Kletschka v. Driver, 411 F.2d supra at 447.

As plaintiffs have raised no issue of class-based discrimination, Counts IV and V of the complaint must be dismissed for failure to state a claim upon which relief can be granted.

### Counts VI–X

Counts VI through X allege the commission of various torts against the

plaintiffs by the twenty-six Attorneys General and the Council of Better Business Bureaus, Inc. Each of Counts VI through X invokes the diversity jurisdiction of this court.

Count VI, though not entirely clear, alleges that the Attorneys General named and the Council of Better Business Bureaus, Inc., held a meeting at Phoenix, Arizona. As a result of this meeting the defendants circulated information through the communications media to encourage and induce "the citizens of several states to breach their contracts with the plaintiffs." It is alleged that as a consequence, many citizens breached their contracts, to the injury of the plaintiffs. Plaintiffs ask compensatory and punitive damages of $200,000,000.

Count VII alleges that the defendant Attorneys General and the Council of Better Business Bureaus, Inc., circulated information publicly and privately that the plaintiffs "were fraudulent in their business affairs"; and that their products were "without merit or value." The purpose of these acts, it is said, was to disparage plaintiffs' products and to injure their business and profits. In consequence, the plaintiffs lost income and reputation and incurred legal expenses. Plaintiffs sue under this count for damages of $51,000,000.

Count VIII alleges that the defendant Attorneys General and the Council of Better Business Bureaus, Inc., "did divers and several acts" in interference with their "anticipated and expected contracts." Plaintiffs seek $51,000,000 in compensation for this damage.

Count IX alleges that the twenty-six Attorneys General and the Council of Better Business Bureaus, Inc., caused nonmeritorious litigation to be brought against the plaintiffs with the intent of defaming the plaintiffs, causing them great expense and putting them out of business. In compensation, plaintiffs ask $1,000,000 damages.

Count X alleges that the same Attorneys General and the Council of Better Business Bureaus, Inc., counselled "citizens of the various states" who had established contractual relationships with the plaintiffs, that such business relationships would be unprofitable. The defendants allegedly procured these breaches by urging that "plaintiffs' products were of little value," which, it is said, was not the truth. As a result, the plaintiffs claim they have lost income and public esteem. They ask compensatory and punitive damages under this count totalling $200,000,000.

No allegation that the defendants formed a conspiratorial agreement is contained in Counts VI through X. It appears from a reading of the complaint as a whole and from oral argument of plaintiffs, that each of these counts is intended to allege a conspiracy. None, however, specifies the circumstances under which the defendants are alleged to have conspiratorially agreed. The only such agreement alleged throughout the ten counts is that alluded to in Counts IV and V as having been made at meetings in Arizona and Puerto Rico. It is not claimed in either Count IV or Count V that the defendant Better Business Bureaus, Inc., was a party to conspiracy agreement. Counts VI through X are, therefore, dismissed with respect to defendant Council of Better Business Bureaus, Inc.

Concerning the remaining defendants, each of Counts VI through X alleges a conspiracy to commit a tort involving conspirators from several states. Throughout the complaint, the only act specified which might be read as an overt act committed in Vermont in furtherance of these conspiracies, is the promulgation by Vermont Attorney General Jeffords of Consumer Protection Regulation 1–A, recited in Count I. Given these allegations, the initial question is whether the act in Vermont by one conspirator in furtherance of a conspiracy is sufficient to give this court in personam jurisdiction over conspirators who have made no direct contact with Vermont in conjunction with the conspiracy.

■ The question of the amenability of a foreign resident to service of process is governed by relevant state law. Arrowsmith v. United Press International, 320 F.2d 219 (2d Cir. 1963). Rule 4(e) of the Vermont Rules of Civil Procedure, upon which plaintiffs rely for service of process outside the state, provides in pertinent part:

(e) *Personal Service Outside the State.* The following persons may be served with the summons and the complaint outside the state, in the same manner as if such service were made within the state, by any person authorized to serve civil process by the laws of the place of service or by a person specially appointed to serve it:

(1) A person whose contact or activity in the state or such contact or activity imputable to him is sufficient to support a personal judgment against him . . . .

The plaintiffs' thesis seems to be this:

(1) The Vermont rule authorizes service of process upon an individual where "activity imputable to him is sufficient to support a personal judgment against him."

(2) An act in furtherance of a civil conspiracy is tortious.

(3) The act of one conspirator is imputable to each co-conspirator.

(4) The acts of the Vermont Attorney General in furtherance of the conspiracy are imputable to each of his co-conspirators; each is, therefore, liable at law for damage resulting from his acts; and each is, therefore, within the purview of Rule 4(e).

■ It is apparent from the Reporter's Notes with respect to Rule 4(e) that due process is intended to provide a constraint upon the jurisdiction that can be asserted under the rule.[6] The limits of due process in this context have been articulated by the Supreme Court in a line of cases which have defined the meaning of due process in the context of the assertion of in personam jurisdiction over non-residents by a given jurisdiction. International Shoe v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed 95 (1945); Travelers Health Association v. Virginia, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154 (1950); Perkins v. Benquet Consolidated Mining Company, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952); McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). V.R.C.P. Rule 4(e) must be construed in a manner consistent with the due process clause. It follows that if jurisdiction asserted under the rule is in defiance of the standards stated in these cases, the persons over whom jurisdiction is sought are not within the purview of the rule.

■ A general statement of the test which must be met, if an assertion of in personam jurisdiction is to satisfy due process requirements, is contained in International Shoe v. State of Washington, 326 U.S. supra, at 316, 66 S.Ct. at 158:

" . . . (D)ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "

The due process requirement of "minimum contacts" is to be applied as a "flexible standard," rather than as a "rigid rule," Hanson v. Denckla, 357 U.S. supra at 251, 78 S.Ct. 1228; see also, Blount v. Peerless Chemicals, 316 F.2d 695 (2d Cir. 1963); Rosen v. Savant Instruments, Inc., 264 F.Supp. 232, 235 (E.D.N.Y.1967). Yet there are several readily identifiable factors which must be weighed to determine whether a for-

6. The Reporter's Notes state in part:
Paragraph (1) of the rule incorporates the language of Vermont's "long arm" statute, 12 V.S.A. § 913(b) . . . .
The statute reaches to the outer limits of the due process clause.

eign defendant has sufficient contact with the forum state to bring him within the in personam jurisdiction of the forum court:[7]

(1) The defendant must have taken voluntary action calculated to have an effect in the forum state. See, Currie, The Growth of the Long Arm: Eight Years of Extended Jurisdiction in Illinois, 1963 U.Ill.L.F. 515, 549. As the Court wrote in Hanson v. Denckla, 356 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L. Ed.2d 1283 (1958):

> "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."

Interpreting, 12 V.S.A. § 855, a statutory antecedent to Rule 4(e), the Vermont Supreme Court held that " . . . jurisdictional power to deal personally with a non-resident defendant in transitory (tortious) actions . . . must be generated by the defendant's intentional participation here." The complainant is called upon to plead sufficient facts to establish that his defendants are causally responsible for the wrongful act within the State of Vermont. O'Brien v. Comstock Foods, Inc., 123 Vt. 461, 465, 194 A.2d 568, 571

(1963). Smyth v. Twin State Improvement Corp., 116 Vt. 569, 575, 80 A.2d 664 (1951).

(2) Assertion or denial of in personam jurisdiction must be fair and reasonable to the parties. As we have seen, the Court in International Shoe v. State of Washington, supra, ruled that the maintenance of a suit must not "offend traditional notions of fair play and substantial justice." In this connection the Court wrote that "(a)n 'estimate of the inconveniences' which would result to the corporation from a trial away from its 'home' or principal place of business is relevant [here]." International Shoe, 326 U.S. at 317, 66 S.Ct. at 158. The Court in Travelers Health Association v. Virginia, supra; in McGee v. International Life Insurance Co., supra; and in Perkins v. Benquet Consolidated Mining Co., supra, emphasized considerations of fairness in different fact situations in deciding whether due process barred the exercise of in personam jurisdiction.

■■■ Applying these standards to the facts presented here, it is clear that the non-resident conspirators do not have sufficient contact with Vermont to satisfy the due process standard. The mere presence of one conspirator in the forum state does not confer personal jurisdiction over another alleged conspirator. Bertha Building Corp. v. National Theatres Corp., 248 F.2d 833, 836 (2d Cir. 1957), cert. denied, 356 U.S. 936, 78 S.Ct. 777, 2 L.Ed.2d 811 (1958); H. L. Moore Drug Exchange, Inc. v. Smith, Kline & French Laboratories, 384 F.2d 97 (2d Cir. 1967); Leasco v. Isidore

---

7. "The nationalization of American society has been reflected in the trend toward greater power of the states over defendants who neither owe them 'allegiance' nor are subject to their physical power. But *Denckla* and *Vanderbilt* reveal that the concept of territorial limitations on state power is still a viable one. The state courts and the lower federal courts are thus left to decide the cases which come before them by the traditional legal reasoning by analogy. The Supreme Court opinions have revealed some if not all the factors which are to be taken into consideration in reaching a conclusion on in personam jurisdiction. They do not reveal how each factor is to be weighed in combination with the others. It may be that it is not possible to do so, and that here as elsewhere in our constitutional law the Supreme Court must depend on the good faith and good judgment of the other courts in the American judicial system." Kurland, The Supreme Court, the Due Process Clause, and the In Personam Jurisdiction of State Courts— From Pennoyer to Denckla: A Review, 25 U.Chi.L.Rev. 569, 623 (1958).

Kerman, 468 F.2d 1326 (2d Cir., 1972). Nor is it enough that the actions in Vermont of the Vermont Attorney General, if found to be overt acts in furtherance of the conspiracy, might confer tort liability on non-resident conspirators. As the court wrote in Leasco v. Isidore Kerman, supra, at 1341:

"We believe, moreover, that attaining the rather low level of foreseeability necessary to support a finding of tort liability is not enough to support in personam jurisdiction. The person sought to be charged must know, or have good reason to know, that his conduct will have effects in the state seeking to assert jurisdiction over him."

Thus it must be asked, with respect to each defendant, whether the complaint alleges that he knew or should have known that his actions in Arizona and Puerto Rico would have effect in Vermont. Neither the status of each defendant as an alleged co-conspirator with a Vermont resident, nor the possibility that he might be liable in tort through the Vermont resident's actions, is enough to permit the assertion of in personam jurisdiction.

The complaint makes no specific allegation that the alleged conspirators intended to affect the plaintiffs' operations in Vermont. Rather, it is alleged that an agreement was reached, in consequence of which the various defendants acted against the plaintiffs, presumably in their own states. Although some damage is said to have occurred in Vermont, the great bulk of the allegations against the non-resident defendants apparently pertain to activities in their own states, unrelated to activities in Vermont.

Not only does the complaint contain no direct allegation that the conspiracy was calculated to have an effect in Vermont; none can be inferred from the pleadings. In McGee v. International Life Insurance Co., 355 U.S. 220, 78 S. Ct. 199, 2 L.Ed.2d 223 (1958), a non-resident defendant was held to have taken voluntary action with respect to the forum state where the cause of action, a contract, had "substantial connection" with the forum state. In this case the cause of action, a conspiratorial agreement, has no "substantial connection" with Vermont. The agreement is said to have been made at meetings in Arizona and Puerto Rico. The conspiracy is not directed toward Vermont. It is not claimed that damage to the plaintiffs in Vermont was particularly severe. If this court were to assume jurisdiction over the non-resident defendants, it would be called upon to decide issues of fact, at least with respect to damages, arising out of events which occurred in more than twenty states,—events unrelated to any actions by the defendants in Vermont. While the court might infer an intention by the non-resident defendants to act through Attorney General Jeffords, if there were a "substantial connection" between the cause of action and Vermont, none is alleged nor demonstrated here.

■■■ It is neither fair to the alleged co-conspirators nor reasonable that they should have to defend themselves in a Vermont court, under the circumstances peculiar to this case. At the same time, it is not unreasonable to require the plaintiffs to pursue their action in other forums. The burden that would be imposed upon the defendants by requiring them to defend themselves in this forum is not justified by the availability here of witnesses or evidence crucial to the plaintiffs' claim. See, McGee v. International Life Insurance Co., supra; Travelers Health Association v. Virginia, supra. Here, the suit is based on an alleged conspiratorial agreement which is said to have occurred at meetings in Arizona and Puerto Rico. The alleged conspirators are residents of twenty-six states. If the conspiracy exists and the defendants acted pursuant to it, plaintiffs could allege that an overt act was committed in pursuance of the conspiracy in any of these states. To allow the maintenance of a civil conspiracy action in every forum where an overt act was

allegedly carried out in furtherance of the conspiracy, would be an open invitation to forum shopping and harassment of defendants by unscrupulous litigants. Such a result would hardly be in keeping with "traditional notions of fair play and substantial justice."

Should the plaintiffs find that their only recourse is to bring individual actions against each conspirator in his home state, this would present no overriding hardship to them under the circumstances presented here. The plaintiffs do business in each of these states; actions are in progress or have been concluded against them in each state; plaintiffs clearly have the legal, administrative and financial resources available in each forum to bring individual actions at no severe hardship to themselves. The lack of such resources was an important consideration in the contrary result reached by the Court in the *McGee* and *Travelers Insurance* cases.[8]

Under the facts presented here, where the alleged conspiracy conduct which primarily occurred outside Vermont, and where the plaintiffs are well situated to bring individual actions against the defendants in their respective districts, an assertion by this court of in personam jurisdiction over the non-resident defendants cannot meet the fairness requirements of *International Shoe* and later cases.

Counts VI through X are dismissed with respect to all the remaining defendants except Vermont Attorney General Jeffords for want of in personam jurisdiction. For the same reason, plaintiffs'

motion to join William J. Brown, individually, and as Attorney General of Ohio, is denied. With respect to Mr. Jeffords, to the extent that Counts VI through X state tort claims against him individually, he is immune from suit for the reasons stated in the discussion of Counts I through III.

An order of dismissal will be entered.

APPENDIX

Exhibit A

State of Vermont

Chittenden County Court SS.

State of Vermont
v.
Dare to be Great et al.

Chittenden County Court
Docket No. C126–71Cnc

## FINAL JUDGMENT

Pursuant to the provisions of the Vermont Consumer Fraud Law, James M. Jeffords, Attorney General for the State of Vermont, filed his complaint herein on October 12, 1971. At a hearing before this Court on June 19, 1972 presided over by the Honorable Franklin J. Billings, the Defendants herein were ordered to answer certain Interrogatories submitted by the Plaintiff within sixty days of the date of said hearing or suffer a default judgment. (Transcript of June 19, 1972 hearing at pages 2 and 3). It further appearing from the court records that the Defendants have failed to answer said Interrogatories as of the date of this judgment, and Plaintiff having made application for said default judgment by its Petition dated September 20, 1972 and duly filed with this Court.

---

8. In the antitrust context, the Supreme Court has approved the requirement of the antitrust venue statute that co-conspirators be sued in separate districts, with no suggestion that such a requirement might be in any way unfair to plaintiffs:

"While a criminal action under the antitrust laws lies in any district where the conspiracy was formed or in part carried on or where an overt act was committed in furtherance thereof, Congress by 15 U.S.C. § 15, placed definite limits on venue in treble damage actions. Certainly Congress realized in so doing that many such cases would not lie in one district as to all defendants, unless venue was waived. It must, therefore, have contemplated that such proceedings might be severed and transferred or filed in separate districts originally."
Bankers Life & Cas. Co. v. Holland, 346 U.S. 379, 384, 74 S.Ct. 145, 148, 98 L.Ed. 106 (1953).

Now, therefore, it is hereby,

Ordered, Adjudged, and Decreed as follows:

1. This court has jurisdiction over the subject matter of this action and of the parties hereto.

2. The complaint states claims upon which relief may be granted against the Defendants under 9 V.S.A., Section 2453(a), commonly known as the Vermont Consumer Fraud Law.

3. In accordance with Rule 37(b)(2)(C) and the Order of this Court made at the June 19, 1972 hearing (Transcript of June 19, 1972 hearing at pages 2 and 3) the Court finds the Defendants to be in default and Judgment is hereby entered against Defendants and for the Plaintiff.

4. That the Defendants, Dare To Be Great, Inc., Glenn W. Turner Enterprises, Inc., Douglas Lord, William McKinley, David Miner, Peter Allen, Vivian LeForge, and Leonard Charlebois, their officers, agents, servants, employees, attorneys, and all those in active concert or participation with them who receive actual notice of this Order are permanently enjoined from:

a. Selling any property, to any person in the State of Vermont, wherein, upon a condition that he purchase such property, such person is granted a license or right to solicit or recruit for profit or economic gain one or more additional persons who will also be granted such license or right upon the purchase of such property. Such prohibition shall apply even though there are additional conditions affecting eligibility for the license or right.

b. Soliciting or recruiting persons in the State of Vermont to purchase any property, wherein, upon a condition that he purchase such property, such person is also granted a license or right to solicit or recruit for profit or economic gain one or more additional persons who will also be granted such license or right upon the purchase of such property. Such prohibition shall apply even though there are additional conditions affecting eligibility for the license or right.

c. Selling any so called "Adventure Course" to any person in the State of Vermont, wherein, upon a condition that he purchase such "Adventure Course," such person is granted a license or right to sell "Adventure Courses" to one or more additional persons who will also be granted such license or right upon the purchase of such "Adventure Course." Such prohibition shall apply even though there are additional conditions affecting eligibility for the license or right.

d. Soliciting or recruiting persons in the State of Vermont to purchase any so called "Adventure Course", wherein upon a condition that he purchase such "Adventure Course", such person also is granted a license or right to sell "Adventure Courses" to one or more additional persons who will also be granted such license or right upon the purchase of such "Adventure Course." Such prohibition shall apply even though there are additional conditions affecting eligibility for the license or right.

e. The use of any misrepresentations, deceptive, or misleading statements in connection with the sale of any property to persons within the State of Vermont.

f. Selling, soliciting for sale, or advertising the so-called "Adventure III Course," "Adventure IV Course," or "$1,000 Plan" in the State of Vermont.

5. That a violation of this injunction by any Independent Sales Trainee (IST), Independent Sales Agent (ISA), or any other agent of the Defendants herein shall be considered to be a violation of this injunction by such agent's principal.

6. That for the purposes of this Order, "property" includes but is not limited to real property, personal property, tangible property, intangible property,

franchises, business opportunities and services.

Dated at Burlington, Vermont, this 24th day of October, 1972.

(s) Robert W. Larrow
ROBERT W. LARROW
Superior Judge