**VERMONT CASTINGS, INC.**

v.

**EVANS PRODUCTS COMPANY, GROSSMAN'S DIVISION.**

**EVANS PRODUCTS COMPANY, GROSSMAN'S DIVISION**

v.

**VERMONT CASTINGS, INC.**

**VERMONT CASTINGS, INC.**

v.

**FRANKLIN CAST PRODUCTS, INC.**

**FRANKLIN CAST PRODUCTS, INC.**

v.

**VERMONT CASTINGS, INC.,** Imex Source, Inc., The Dutchwest India Group, Consolidated Foundry Industries, Ltd., Tradex Orient, Ltd., Dutchwest India, Ltd., Dutchwest India, Inc.

**Civ. A. Nos. 79–265, 80–162.**

United States District Court, D. Vermont.

March 31, 1981.

---

12. Defendant expended $15,763.02 on plaintiff's behalf while plaintiff was still on the job. Subtracting this amount from the contract price, $61,000.00, leaves the amount not paid to plaintiff—$45,236.98.

Richard E. Davis, Richard E. Davis Associates, Inc., Barre, Vt., Robert J. Horn, Jr., Kenway & Jenny, Boston, Mass., and Kimberly B. Cheney, Cheney & Brock, Montpelier, Vt., for plaintiff.

Martin K. Miller, Samuelson, Portnow, Miller & Eggleston, Burlington, Vt., Elliot A. Salter, Salter & Michaelson, Providence, R. I., and Laurence Rosenthal, Blum, Kaplan, Friedman, Silberman & Beran, New York City, for defendants Evans Products Company, Grossman's Division, and Franklin Cast Products, Inc.

Donald E. O'Brien, Burlington, Vt., for counterclaim-defendants Imex Source, Inc., The Dutchwest India Group, Consolidated Foundry Industries, Ltd., Tradex Orient, Ltd., Dutchwest India, Ltd., Dutchwest India, Inc.

## OPINION AND ORDER

COFFRIN, District Judge.

Following commencement of a patent and trademark infringement action, Franklin Cast Products, Inc. (Franklin) counterclaimed against Vermont Castings, Inc., the plaintiff in the underlying action, together with six additional counterclaim-defendants, who will be referred to as the Imex Group for simplicity. Franklin charges the counterclaim-defendants with unfair trade competition, intentional interference with business relationships and conspiracy in restraint of trade in violation of the federal antitrust laws. The Imex Group now moves to dismiss the counterclaim on the grounds of lack of personal jurisdiction, improper venue, and failure to obtain leave of court in bringing the Group in as an additional counterclaim-defendant. For the reasons set forth below, this motion is denied.

Franklin contends in its counterclaim that Vermont Castings agents prepared a letter which described the underlying infringement action in misleading ways. The letter is alleged to have been sent to whole-

salers and retailers around the country who deal in Franklin products. Franklin further charges that Imex Group agents planned and conspired with Vermont Castings agents in the publication and republication of the letter.

The Imex Group, a loose conglomeration of interrelated companies incorporated outside the State of Vermont, argues that its contacts with Vermont are insufficient to support personal jurisdiction over it on the common law claims of unfair trade competition and intentional interference with business relationships. The Group also maintains that venue is improper in this court on the federal antitrust claims. Finally, the Group contends that it is not properly before the court because Franklin has not obtained our permission in bringing the Group in as an additional counterclaim-defendant. We will discuss these issues separately.

I. Personal jurisdiction—the common law claims.

██ Service of process on the members of the Imex Group was accomplished by substituted service on the secretary of the State of Vermont pursuant to Vt.Stat.Ann. tit. 12, § 855 and its jurisdictional counterpart, Vt.Stat.Ann. tit. 12, § 913, Vermont's long-arm statute. Section 855 provides that the secretary of state shall be deemed the process agent for a foreign corporation where the contact with or activity in Vermont of or imputable to the corporation is sufficient to support a personal judgment against it in Vermont. This section is said to express a policy to assert jurisdiction over foreign corporations to the full extent permitted by the due process clause of the fourteenth amendment. *See Bard Building Supply Co., Inc. v. United Form Corp.*, 137 Vt. 125, 400 A.2d 1023 (1979); *Deveny v. Rheem Manufacturing Co.*, 319 F.2d 124 (2d Cir. 1963). Process may be validly served under this provision, however, only in an action or proceeding arising out of the contact with or activity in Vermont. *Davis v.*

*Saab Scania*, 133 Vt. 317, 339 A.2d 456 (1975); *Huey v. Bates*, 135 Vt. 160, 375 A.2d 987 (1977).

We have examined the discovery documents and affidavits which have been submitted in connection with the present motion. It does not appear that Imex Group agents participated in drafting or circulating the letter which is the subject of the counterclaim when it was first mailed out. It does appear, however, that Vermont Castings President Murray Howell recirculated the letter from his Randolph, Vermont offices at the request of John Brice, an Imex Group employee, who suggested a number of retailers and wholesalers who had not received the letter initially. Brice apparently never met personally with Howell in the Randolph offices but made his suggestions via telephone and mail communications addressed to Howell in Randolph. Franklin has pointed us to no other Imex Group contacts in Vermont relating to the present claim.

██ In this posture, it is questionable whether the Vermont contacts and activities of the Imex Group alone are sufficient to support personal jurisdiction in this court. *See Hanson v. Denckla*, 357 U.S. 235, 237, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) ("it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws"). Franklin has alleged, however, that Vermont Castings and the Imex Group entered into a conspiracy to commit the torts set forth in its counterclaim. Based on the notion that the acts of a conspirator in furtherance of the conspiracy may be attributed to other members of the conspiracy, *see Sheple v. Page*, 12 Vt. 519 (1840), the conduct of Vermont Castings and its agents may be relevant in determining the jurisdictional question pursuant to what has been labelled the "conspiracy theory of personal jurisdiction." [1]

---

1. The conspiracy theory in this case runs as follows:

1 Vermont Castings and the Imex Group entered into a civil conspiracy when Vermont

Jurisdiction under the conspiracy theory is of course limited by the due process considerations of fair play and substantial justice. *See Turner v. Baxley*, 354 F.Supp. 963, 975–78 (D.Vt.1972); *Leasco Data Processing Equipment Corp. v. Maxwell*, 319 F.Supp. 1256, 1261 (S.D.N.Y.1970), *aff'd in part, rev'd in part*, 468 F.2d 1326 (2d Cir. 1972). Thus, mere allegations of conspiracy, even coupled with the presence of one conspirator within the jurisdiction, do not give jurisdiction over all nonresident co-conspirators. *Id.; Bertha Building Corp. v. National Theatres Corp.*, 248 F.2d 833, 836 (2d Cir. 1957), *cert. denied*, 356 U.S. 936, 78 S.Ct. 777, 2 L.Ed.2d 811 (1958). Nor is it enough that the actions in the forum of the resident conspirator, if found to be overt acts in furtherance of the conspiracy, might confer tort liability on nonresident co-conspirators. *Turner*, 254 F.Supp. at 977. To meet due process requirements, a substantial connection between the conspiracy and the forum state must be shown. *See id.* This connection exists where substantial acts in furtherance of the conspiracy were performed in the forum state. *Gemini Enterprises, Inc. v. WFMY Television Corp.*, 470 F.Supp. 559, 564 (M.D.N.C.1979). Furthermore, the nonresident co-conspirator "must know, or have good reason to know, that his conduct will have effects in the [forum] state." *Turner*, 354 F.Supp. at 977, *quoting Leasco Data Processing Equipment Corp. v. Maxwell*, 468 F.2d 1326, 1341 (2d Cir. 1972); *see Gemini Enterprises*, 470 F.Supp. at 564.

Although the plaintiff has the burden to establish jurisdiction, *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936), a showing of "threshold" or "prima facie" jurisdiction is all that is required when determination of the jurisdictional facts is intertwined with and may be dispositive of questions of ultimate liability. *United States v. Montreal Trust Co.*, 358 F.2d 239, 242 (2d Cir. 1966), *cert. denied*, 384 U.S. 919, 86 S.Ct. 1366, 16 L.Ed.2d 440 (1966); *Ghazoul v. International Management Services, Inc.*, 398 F.Supp. 307, 309 (S.D.N.Y.1975).[2] This is particularly apt in cases alleging civil conspiracy. *See Mandelkorn v. Patrick*, 359 F.Supp. 692, 696 (D.D.C.1973); *McLaughlin v. Copeland*, 435 F.Supp. 513, 530 (D.Md.1977). Our examination convinces us that Franklin has met this threshold showing. It cannot be seriously questioned that the Imex Group, through its employee John Brice, knew or should have known that the communications between Brice and Vermont Castings President Howell would have effects in Vermont. Proceeding at Brice's express request, Howell recirculated the letter which is apparently at the heart of this counterclaim from his Randolph offices. This recirculation, moreover, was the crucial act linking the alleged conspiracy with Vermont.

Based on the present showing, we conclude that Howell's actions in recirculating

---

Castings President Howell agreed to send the challenged letter to a group of wholesalers and retailers suggested by Imex Group agent Brice.

2  Because the acts of one conspirator in furtherance of the conspiracy are attributable to his co-conspirators, the circulation of the letter by Howell on Brice's suggestion may be attributed to the Imex Group.

3  Vt.Stat.Ann. tit. 12, §§ 855 and 913 authorize service of process upon and the exercise of jurisdiction over a foreign corporation where "the contact or activity imputable to it . . . is sufficient to support a Vermont personal judgment against it.

4  Considering the actions of Howell attributable to the Imex Group, service of process upon the Group was valid thereby subjecting it to the jurisdiction of this court.

*See Turner v. Baxley*, 354 F.Supp. 963, 975 (D.Vt.1972); *McLaughlin v. Copeland*, 435 F.Supp. 513, 529–30 (D.Md.1977).

**2.**  Because Franklin need only make a threshold showing of jurisdiction at this stage of the proceedings, it would be inappropriate to preclude the Imex Group from rechallenging jurisdiction should the facts develop differently at trial than as set forth here. If personal jurisdiction is again challenged at trial, Franklin must then prove jurisdictional facts by a preponderance of the evidence. *See Jetco Electronic Industries, Inc. v. Gardner*, 473 F.2d 1228, 1232 n.4 (5th Cir. 1973); *Oxford First Corp. v. PNC Liquidating Corp.*, 372 F.Supp. 191, 193 n.2 (E.D.Pa.1974); *Ghazoul v. International Management Services, Inc.*, 398 F.Supp. 307, 310 n.1 (S.D.N.Y.1975).

the letter may be imputed to the Imex Group and are sufficient to support jurisdiction over the Group under the conspiracy theory. The motion to dismiss for lack of personal jurisdiction is denied without prejudice to renewal at trial.

## II. Venue—the federal antitrust claim.

■ We turn now to the Imex Group's contention that venue is improper in this court on Franklin's federal antitrust claim. Special venue provisions for antitrust actions are outlined in sections 4 and 12 of the Clayton Act, 15 U.S.C. §§ 15, 22. Pursuant to section 12 of the Clayton Act, 15 U.S.C. § 22, an antitrust action may be brought against a corporation in any judicial district where it is an inhabitant or where it may be found or transacts business. The general venue statute, 28 U.S.C. § 1391, is also applicable to antitrust suits and may provide a basis for venue when the special provisions of the Clayton Act do not. *Board of County Commissioners v. Wiltshire Oil*, 523 F.2d 125, 129–30 (10th Cir. 1975); *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979) (Browning, J., concurring); *Redmond v. Atlantic Coast Football League*, 359 F.Supp. 666, 669 (S.D.Ind.1973); *Iranian Shipping Lines, S.A. v. Moraites*, 377 F.Supp. 644, 647 (S.D.N.Y.1974). Section 1391(b) provides that a civil action not founded solely on diversity of citizenship may be brought in the judicial district in which the claim arose.

The Imex Group members are not located in Vermont. Although it appears that Group members advertise in magazines and trade journals with some circulation in Vermont and although they have represented that they sell in each of the fifty states of the Union, it does not appear that the Group, either in the aggregate or by its components, transacts sufficient business here to meet the test for venue under section 12 of the Clayton Act, 15 U.S.C. § 22. *See San Antonio Telephone Co. Inc. v. American Telephone & Telegraph Co.*, 499 F.2d 349 (5th Cir. 1974) (national advertising which finds its way into the judicial district is alone insufficient to support a finding of transaction of business within the district); *Athletes Foot of Delaware, Inc. v. Ralph Libonati Co., Inc.*, 445 F.Supp. 35 (D.Del.1977) (isolated, sporadic, or miniscule contacts with the forum state are insufficient to fulfill the test for venue which is satisfied where the corporate defendant transacts business in the district of any substantial character). Accordingly, we must determine whether or not Franklin's claim arose in the district. In making this determination, we find instructive the words of the District of Columbia Circuit in *Lamont v. Haig*, 590 F.2d 1124, 1134–35, 192 U.S.App.D.C. 8 (1978):

> [W]here "the claim arose" should in our view be ascertained by advertence to events having operative significance in the case, and a common sense appraisal of the implications of those events for accessibility to witnesses and records.... So long as the substantiality of the operative events is determined by assessment of their ramifications for efficient conduct of the suit ... loyalty to the objectives of Section 1391(b) will be amply preserved.

■ The principal events having operative significance in Franklin's claim are centered in Vermont. The essence of the alleged conspiracy in restraint of trade appears, at this stage, to be embodied in the telephone and mail communications initiated by Imex Group agent Brice from outside Vermont and addressed to Vermont Castings President Howell at his Randolph, Vermont offices. Moreover, the letter which Franklin finds offensive was drafted in and circulated from these offices.

■ Equally important to our determination is the fact that the challenged letter deals with the Vermont Castings patent and trademark action already before the court. The witnesses and records connected with the underlying action will undoubtedly be of vital importance in a determination of Franklin's counterclaim. Judicial economy would not be served by dismissing a portion of this antitrust action so that many issues of fact would have to be litigated again in another district where venue might argu-

ably be more appropriate. *See Goggi Corp. v. Outboard Marine Corp.*, 422 F.Supp. 361, 365 (S.D.N.Y.1976). The provision of section 1391(b) permitting a nondiversity civil action to be brought in the district in which the claim arose was added to the statute in 1966 "to assure at least one venue that will be proper as to all defendants ... in a multi-party action." 1 Moore's Federal Practice ¶ 0.142[5.–2], at 1433–34 (2d ed. 1980). *See also Brunette Machine Works v. Kockum Industries*, 406 U.S. 706, 710 n.8, 92 S.Ct. 1936, 1939 n.8, 32 L.Ed.2d 428 (1972). We think that venue as to all the counterclaim-defendants is proper here. Accordingly, the motion to dismiss for improper venue is denied.

III. Failure to obtain leave of court in naming the Imex Group as an additional counterclaim-defendant.

The Imex Group argues finally that it is not properly before the court as Franklin never secured our permission allowing the Group to be named as an additional counterclaim-defendant. Rule 13(h), Federal Rules of Civil Procedure, provides that "[p]ersons other than those made parties to the original action may be made parties to a counterclaim ... in accordance with the provisions of Rules 19 and 20." Rules 19 and 20, Fed.R.Civ.P., respectively, concern mandatory joinder of parties needed for just adjudication and permissive joinder of parties defendant if a claim arising out of the same transaction is asserted against them.

Although Professor Moore notes in his Federal Practice treatise that the counterclaim-plaintiff seeking to bring in additional parties pursuant to Rule 13(h) should secure an order from the court that these parties be made defendants to the counterclaim, he also argues persuasively that the 1966 revision of the rule, which dropped the provision that "the court shall order [additional parties] to be brought in," eliminates the need to obtain leave of court where the new parties are being brought in on a counterclaim which is raised in the original answer. *See* 3 Moore's Federal

Practice ¶ 13.39, at 13–998–99 (2d ed. 1980). We agree that leave of court is no longer required. The spirit of the Federal Rules is served by eliminating unnecessary motions. Any abuse of the joinder provisions can be remedied upon motion under Rule 21 which provides that parties may be dropped by order of the court on such terms as are just. *See id.* at n.30. Accordingly, the motion to dismiss for failure to obtain leave of the court in bringing the Imex Group in as an additional counterclaim-defendant is denied.

For all of the reasons set forth above, it is hereby ORDERED that the motion of the Imex Group to dismiss Franklin's counterclaim is denied.