Linda C. CAWLEY, et al.

v.

Henry W. BLOCH, et al.

Civ. No. Y–81–2523.

United States District Court,
D. Maryland.

July 29, 1982.

Arnold M. Weiner and Richard V. Falcon, Baltimore, Md., for plaintiffs.

Paul V. Niemeyer and David H. Bamberger, Baltimore, Md., for defendants.

## MEMORANDUM OPINION AND ORDER

JOSEPH H. YOUNG, District Judge.

Plaintiffs, Linda C. Cawley and William R. Schmidt, III, are citizens and residents of Maryland. They formed and operated one of the first legal clinics in the United States in 1976 and currently operate six clinics. Defendant H & R Block, Inc. ("H & R Block") is a Missouri corporation with its principal place of business in Missouri, and is qualified to do business in Maryland. Block Management Company ("Block Management") is a subsidiary of H & R Block, Inc., and was incorporated in Missouri and has its principal place of business there. Henry W. Bloch ("Bloch") is a citizen and resident of Missouri and is president and chief executive officer of H & R Block. I. J. Mnookin ("Mnookin") is a citizen and resident of Missouri and is assistant to the president of H & R Block.

Plaintiffs allege that H & R Block, through an agent, contacted plaintiffs to discuss the possibility of having plaintiffs operate legal clinics for H & R Block. Plaintiffs allege they were twice invited to

H & R Block's headquarters to discuss the plan that they provided defendants with detailed information concerning plaintiffs' clinics, after Bloch represented that, if H & R Block decided to establish legal clinics, it would do so only with plaintiffs. Plaintiffs also allege that they opened their books in Maryland for inspection by a consultant of H & R Block, H & R Block's general counsel and Mnookin. The complaint alleges that H & R Block subsequently entered into an agreement with Hyatt Legal Services under which H & R Block manages legal clinics using plaintiffs' administrative scheme.

Plaintiffs sue in contract and quantum meruit and for fraudulent and negligent misrepresentation and concealment, seeking $3.2 million in compensatory damages and $9.6 million in punitive damages. Defendants Mnookin and Bloch have moved to dismiss for lack of personal jurisdiction and defendant Block Management has moved to dismiss for failure to state a claim.

## PERSONAL JURISDICTION OVER BLOCH AND MNOOKIN

Plaintiffs' attempt to base personal jurisdiction over Bloch and Mnookin upon the conspiracy theory of jurisdiction. That doctrine is based on two principles: (1) that the acts of one co-conspirator are attributable to all co-conspirators, *McLaughlin v. Copeland*, 435 F.Supp. 513, 530 (D.Md.1977) ("*McLaughlin*"); and (2) that the constitutional requirement of minimum contacts between non-resident defendants and the forum can be met if there is a substantial connection between the forum and a conspiracy entered into by such defendants. *Vermont Castings, Inc. v. Evans Products Co.*, 510 F.Supp. 940, 944 (D.Vt.1981). The conspiracy theory of jurisdiction as developed in the cases, holds that when several

individuals (1) conspire to do something (2) that they could reasonably expect to have consequences in a particular forum, if one co-conspirator (3) who is subject to personal jurisdiction in the forum (4) commits overt acts in furtherance of the conspiracy,[1] those acts are attributable to the other co-conspirators, who thus become subject to personal jurisdiction even if they have no other contacts with the forum. *See Vermont Castings, supra*, 510 F.Supp. at 944; *National Egg Co. v. Bank Leumi le-Israel B. M.*, 504 F.Supp. 305, 313 (D.Ga.1980); *Gemini Enterprises, Inc. v. WFMY Television Corp.*, 470 F.Supp. 559, 564 (D.N.C.1979); *McLaughlin* at 529–30; *Leasco Data Processing Equipment Corp. v. Maxwell*, 319 F.Supp. 1256, 1261–62 (S.D.N.Y.1970), *aff'd*, 468 F.2d 1326, 1343 (2d Cir. 1972).

There is some ambiguity surrounding the interaction between the third and fourth elements. Where, as here, the co-conspirator who commits the overt acts is not a resident of the forum, the overt acts must be sufficient to establish jurisdiction over that co-conspirator under the state's long-arm statute. *See, e.g., National Egg, supra*, 504 F.Supp. at 313–14; *McLaughlin, supra*, 435 F.Supp. at 529–30. The reasoning behind this position is that only if the overt acts are sufficient to establish long-arm jurisdiction over the conspirator who committed the acts would it be fair to subject to personal jurisdiction the other co-conspirators who are merely "deemed" to have committed the overt acts.

However, in several cases in which the conspirator who committed the overt acts was a resident of the forum, courts have required only that "substantial acts" in furtherance of the conspiracy be committed in the forum.[2] *See Vermont Castings, supra*,

1. The overt acts need not be committed in the forum. In *McLaughlin*, there were three non-resident co-conspirators, one of whom mailed letters into Maryland. The court found that there was personal jurisdiction over that defendant under the Maryland long-arm section providing for jurisdiction over individuals who cause tortious injury in or outside the state by an act outside the state if he engages in a persistent course of conduct in the state. *Id.* at 529–30. The court went on to hold that under

the conspiracy theory, the acts of the one co-conspirator were attributable to the other non-resident conspirators, who thus became subject to personal jurisdiction under the same long-arm section. *Id.*

2. Of course, the second element, requiring that the conspirators could reasonably have expected their actions to have effects in the forum, must also be met. *See Vermont Castings, su-*

510 F.Supp. at 944; *Gemini Enterprises, supra,* 470 F.Supp. at 564. While these courts did not address the point explicitly, the only reasonable interpretation of this standard is that the acts committed in furtherance of the conspiracy must be of a type that, if committed by the non-resident co-conspirators themselves, they would have provided a basis for subjecting the non-residents to personal jurisdiction under the forum's long-arm statute. If the overt acts do not meet this standard, it would be patently unfair to subject those non-residents to personal jurisdiction via the conspiracy theory, under which the non-residents' contacts with the forum are less direct.

█ All this suggests a need for a simplified articulation of the conspiracy theory of jurisdiction. Under that doctrine, when

(1) two or more individuals conspire to do something

(2) that they could reasonably expect to lead to consequences in a particular forum, if

(3) one co-conspirator commits overt acts in furtherance of the conspiracy, and

(4) those acts are of a type which, if committed by a non-resident, would subject the non-resident to personal jurisdiction under the long-arm statute of the forum state,

then those overt acts are attributable to the other co-conspirators, who thus become subject to personal jurisdiction in the forum, even if they have no direct contacts with the forum.

█ The fourth requirement is not met in the instant case. Plaintiffs identify as overt acts in Maryland (1) the acts of Mnookin and (2) the acts of H & R Block's consultant and general counsel, who were allegedly acting as agents of Mnookin and Bloch. Mnookin acted in Maryland as a representative of his corporation not in his individual capacity, and "[c]ontacts as a corporate representative on corporate business do not give rise to personal jurisdiction over the individual." *Quinn v. Bowmar Publ. Co.,* 445 F.Supp. 780, 786 (D.Md.1978). This

principle, known as the fiduciary shield doctrine, also applies to the acts of the consultant and general counsel. The theory behind the claim of personal jurisdiction based upon those acts is that acts done by defendants' agents, are attributable to defendants as if they themselves had done the acts. However, if the defendants had done those acts personally, it would have been in their capacities as representatives of the H & R Block corporation, and, once again, there is no basis for personal jurisdiction.

In *In Re Mid-Atlantic Toyota Antitrust Litigation,* 525 F.Supp. 1265, 1270–71 (D.Md.1981) ("*Toyota*") this Court held that the fiduciary shield doctrine did not apply when a corporate officer had committed a personal or business tort in the forum. Subsequent to that decision, the Second Circuit criticized *Merkel Assoc., Inc. v. Bellofram Corp.,* 437 F.Supp. 612 (W.D.N.Y. 1977), the case upon which this Court relied in *Toyota.* In *Marine Midland Bank, N. A. v. Miller,* 664 F.2d 899 (2d Cir. 1981) ("*Marine Midland*") the Second Circuit rejected the holding in *Merkel* that the fiduciary shield was *never* available where the acts of a corporate officer are tortious. The Second Circuit held that, since the doctrine is an equitable one, its application depends on the facts of the case, with the ultimate test being the fairness of requiring the defendant to defend a suit in the forum. The Court held that the applicability of the fiduciary shield doctrine

> depends generally on the employee's faithful pursuit of the corporation's interests rather than his own interests. Thus, when a corporate employee acts in his own personal interest rather than in the best interest of his corporation, he is not protected by the fiduciary shield since it is equitable that his self-interested actions be considered his own and be treated as a predicate for the exercise of jurisdiction over him personally.

*Id.* at 903.

Also, since the opinion in *Toyota,* the Court of Special Appeals of Maryland, in a

case of first impression, adopted the fiduciary shield doctrine expressed in *Quinn, supra. Umans v. P. W. P. Services, Inc.*, 50 Md.App. 414, 420, 439 A.2d 21 (1982). The court did not expressly address the applicability of the fiduciary doctrine in situations in which an individual defendant has committed a tort in Maryland. However, the suit at issue included claims for defamation and intentional interference with contractual arrangements. The court noted that plaintiffs claimed three bases for personal jurisdiction over the individual defendant, including Md.Ann.Code, Cts. & Jud.Proc., § 6–103(b)(3), which provides for personal jurisdiction over any person who "causes tortious injury in the State by an act or omission in the State." Referring to all three claimed bases of jurisdiction, the court held that there was no need to examine the extent of the defendant's contacts with Maryland, since his only contacts were those as a corporate officer. If the court had believed that there was an exception to the general rule when the defendant has committed a tort, the court presumably would have so stated and then proceeded to examine the sufficiency of defendant's contacts with Maryland under § 6–103(b)(3).

In light of these developments, an individual's acts in Maryland on behalf of his corporation[3] do not subject him to personal jurisdiction in Maryland, even when those acts are tortious.

## FAILURE TO STATE A CLAIM

Defendant Block Management has moved to dismiss for failure to state a claim and has filed an affidavit by one of its directors who states that the company was incorporated on May 30, 1980, five months after H & R Block wrote plaintiffs to terminate all negotiations. Block Management argues that, since it was not in existence at the time of the alleged wrongdoing, it cannot be held responsible, *citing Sigler v. Le Van*, 485 F.Supp. 185, 186 (D.Md.1980) and *Economu v. Butz*, 466 F.Supp. 1351 (S.D.N.Y. 1979), *aff'd*, 633 F.2d 203 (2d Cir. 1980) (in both cases, the courts dismissed claims against federal government officials who had not been appointed to their positions until after the events complained of).

Plaintiffs have responded with a theory that, since Block Management is a wholly-owned subsidiary of H & R Block, Block Management is the beneficiary of the alleged fraud. However, none of the cases cited by plaintiffs supports their position that Block Management can be held liable. Those cases deal with plaintiff corporations formed after an alleged fraud on individuals who give their claims to the corporation upon its formation. Such a corporation is in effect an assignee of the claims held by the individuals who formed it. Plaintiffs' attempt to force an "assignment" of liability upon a corporation formed subsequent to the alleged tort bears no relation to these cases.

Plaintiffs apparently rely on a variant of the corporate disregard doctrine. That doctrine normally is used to pierce the corporate veil and hold shareholders, including parent corporations of wholly-owned subsidiaries, liable for the torts of the corporation. However, since the doctrine is an equitable one that should be applied on a case-by-case basis, it is reasonable to apply it to plaintiffs' attempt to hold a subsidiary liable for the acts of a parent corporation. *FMC Finance Corp. v. Murphree*, 632 F.2d 413, 421–22 (5th Cir. 1980). *Cf. Edwin K. Williams and Co. v. Edwin K. Williams, Etc.*, 542 F.2d 1053, 1063 n.12 (9th Cir. 1976) (in a case involving the corporate disregard doctrine, held that it does not affect the analysis that the subsidiary created the parent).

■ However, plaintiffs fail to establish either of the two necessary conditions for disregarding a corporate entity. First, plaintiffs do not allege any facts that suggest that the relationship between the two corporations is anything other than a legitimate parent-subsidiary relationship. *See Dixon v. Process Corp.*, 38 Md.App. 644, 653, 382 A.2d 893 (1978) (setting forth a list of

---

**3.** While the Maryland courts have not explicitly adopted the analysis of *Marine Midland*, the standard expressed there is simply a method of determining when an individual can be said to have acted on his corporation's behalf rather than on his own behalf.

12 factors relevant to the determination of whether a subsidiary is merely an instrumentality of the parent corporation).

Second, even if plaintiffs could allege such facts, under Maryland law, a court may disregard a corporate entity "only when necessary to prevent fraud or to enforce a paramount equity." *Dixon, supra,* at 654, 382 A.2d 893 *citing Bart Arconti & Sons, Inc. v. Ames-Ennis, Inc.,* 275 Md. 295, 312, 340 A.2d 225 (1975). This standard is not met here. The corporate relationship between H & R Block and Block Management could not have been designed to defraud anyone, simply because the alleged fraud against plaintiffs had ceased by the time Block Management was incorporated. *See Damazo v. Wahby,* 259 Md. 627, 634, 270 A.2d 814 (1970) (court refused to disregard the corporate entity where there was no evidence that the individual shareholder used the corporations "as instruments to perpetrate a fraud"). The decision to create Block Management was purely a business decision. At worst, H & R Block set up Block Management to implement H & R Block's business plans made possible by the fraud alleged to have already been perpetrated by H & R Block on plaintiffs.

For the reasons stated herein, it is this 29th day of July, 1982, by the United States District Court for the District of Maryland, ORDERED:

1. That the complaint BE, and the same IS, hereby DISMISSED as to defendants HENRY W. BLOCH and I. J. MNOOKIN for lack of personal jurisdiction; and

2. That summary judgment BE, and the same IS, hereby GRANTED in favor of defendant BLOCK MANAGEMENT COMPANY.