# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### August 28, 2001 Session

## ARTHUR W. ANDERSON, SR., ET AL. v. EDWIN S. ROBERSON, ET AL.

**A Direct Appeal from the Circuit Court for Shelby County**
**No. 93283-6 T.D.      George H. Brown, Jr., Judge**

---

**No. W2000-01879-COA-R3-CV - Filed November 6, 2001**

---

This appeal presents the sole issue of *in personam* jurisdiction of a nonresident corporation and the nonresident individual owning a majority interest in the corporation by virtue of their activities, as described in the Tennessee Long Arm statute, or alternatively, as co-conspirators with defendants, subject to the jurisdiction of the court.

**Tenn.R.App.P. 3; Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J. and HOLLY KIRBY LILLARD, J., joined.

Warner Hodges, III, Germantown, For Appellants, Arthur W. Anderson, Sr. and Jerry Hollingsworth

David J. Cocke, Memphis, and C. William Denton, Memphis, For Appellees, Edwin S. Roberson, John S. Wilson, Deceased, James W. Rayner, and Grand Oaks, Inc., a Mississippi Corporation

## OPINION

This action arises out of a plan to build a real estate development in Oxford, Mississippi, which includes a golf course, residential housing, and commercial out-parcels. The development plan was to be financed by a complex investment scheme which would include bonds issued by the City of Oxford to pay for all of the land, and would be used to construct the golf course. Additionally, private money was needed to tie up options on the properties in question, as well as to pay for engineering and other preparation costs necessary to induce the City's participation. It is out of this private financing arrangement that the dispute in this action arose.

Factual Background

The Plaintiffs' version of the facts in this case is as follows. In late 1992 and early 1993, Plaintiffs/Appellants Arthur W. Anderson, Sr. and Jerry Hollingsworth ("Anderson,"

"Hollingsworth" or, collectively, "Plaintiffs") conceived of a plan to create a multi-faceted real estate development in Oxford, Mississippi. Plaintiffs approached Defendant Edwin S. Roberson ("Roberson")[1] and Paul Anderson, Arthur Anderson's nephew, in order to raise money for the development project.

Arthur Anderson indicated that he could participate in the project as long as he would not need to sign individually on a large loan. At this early stage, however, Plaintiffs did not anticipate such large loans would be necessary, since they planned on the City of Oxford taking ownership of the golf course, and financing the purchase through Certificate of Participation Bonds. Mr. Roberson apparently approached his immediate supervisor, Defendant John S. Wilson ("Wilson")[2], and Defendant James Rayner ("Rayner"), for the initial $200,000 seed money needed. Plaintiffs contemplated that they, along with Paul Anderson, would control 60% of the project, while Defendants would control the remaining 40%.

In April, 1993, Defendants informed Plaintiffs that they no longer intended to pursue Oxford City bond financing, but that they believed private financing of both the golf course and the first phase of the residential development to be the best choice for funding the project. Rayner allegedly told Anderson that if Plaintiffs would give Rayner an additional 10% of the project, Plaintiffs would "never have anything else to worry about, the money would be there."

It was at this point that the dealings between the parties began to deteriorate. Anderson agreed to give Rayner the additional 10% interest in the development, and Plaintiffs apparently believed this meant that they would share in the project equally with Defendants. However, shortly thereafter, Paul Anderson dropped out of the project because he was unwilling to sign the large loan required under the private financing scheme. Defendants kept the 10% Anderson had given Rayner, as well as Paul Anderson's 10% share, which Defendants Roberson and Wilson apparently divided between themselves. This left Defendants with a 60% stake in the project and control over the development corporation to be formed.

At approximately the same time Plaintiff Anderson was approached about giving Defendants 10% of his share of the project, Defendant Wilson extended Plaintiff Jerry Hollingsworth a $20,000 loan. Plaintiffs allege that Defendants promised Hollingsworth a $50,000 developer's fee at the closing of the bank loan for the development project. Based upon these representations, Hollingsworth apparently entered into a $40,000 settlement agreement to repay the Bank of Bartlett on a separate matter. Shortly before the loan closed on August 6, 1993, Roberson told Hollingsworth that the $20,000 loan and the entire Bank of Bartlett obligation would be taken care of if Hollingsworth waived the $50,000 development fee. Hollingsworth agreed.

---

[1]Mr. Roberson is a resident of Shelby County, Tennessee and is not a party to this appeal.

[2]Mr. Wilson is now deceased.

Defendant Grand Oaks, Inc., ("Grand Oaks" or the "Corporation") was formed in July of 1993 under Mississippi law, and Defendant Roberson signed the articles of incorporation on August 6, 1993, the same date as the loan closing. The Grand Oaks Shareholders' Agreement, dated July 1, 1993, provided that the Corporation's 1,000 shares of stock be divided: 25%, 20% and 15% to Defendants Rayner, Wilson and Roberson, respectively; and 20% each to Plaintiffs Anderson and Hollingsworth.

Plaintiff Hollingsworth alleges that, in spite of Defendants' agreement to take care of his debt to Bank of Bartlett, Defendants later informed him that the debt was still outstanding. Rather than default on the Bank of Bartlett agreement, Hollingsworth claims Defendants put him in a position of "financial duress" which forced him to enter into a stock pledge agreement, which, Hollingsworth believed, would allow him to sell or borrow against his stock in the new corporation. Hollingsworth claims that, unbeknownst to him, Defendants had added language in the agreement which provided that Hollingsworth's right to sell or borrow against his stock was "subject to the restrictions and by-laws of the corporation." Since the shareholders' agreement provided a sixty (60) day right of first refusal on any sale of company stock, Hollingsworth was effectively prevented from using his stock to raise money.

Plaintiffs also allege they were told that the law firm Defendants had selected to form the new corporation and draft documents associated with the incorporation was acting on behalf of the corporation. They allege that they later found out that the firm in question had contracted with the Defendants, individually, and that the corporate documents reflected an initial stock authorization of 10,000 shares, whereas Plaintiffs and Defendants had initially only agreed to issuing 1,000 shares.

Plaintiffs also claim that Defendants held a secret meeting in Memphis, which Plaintiff Hollingsworth found out about and attended. The meeting was between Defendant Rayner and representatives of the Marriot Corporation ("Marriot"), the entity tapped to manage the hotel property. At the meeting, Defendant Rayner allegedly told Marriot representatives that he had decided to develop and own the hotel property himself, and that Plaintiffs had no financial interest in the project.

A few days before one of Hollingsworth's notes to Rayner became due, Rayner allegedly informed Hollingsworth that he would not renew the note, and that Hollingsworth would have to pay the note or forfeit his stock in the corporation, pursuant to the stock pledge agreement. In order to avoid the loss of his interest in the Corporation, Hollingsworth found an investor who was willing to let Hollingsworth borrow against his stock. Hollingsworth alleges that Rayner found out about Hollingsworth's plans and contacted the investor to advise him that Hollingsworth was subject to the right of first refusal terms in the shareholders' agreement. Hollingsworth alleges that Rayner then contacted him to advise him that Rayner already had a judgment against Hollingsworth's stock, which was, apparently, untrue. Given no alternative, Hollingsworth claims he was forced to transfer his stock to Rayner on May 6, 1994, giving Defendants an 80% stake in the Grand Oaks, Inc.

Plaintiffs allege that, since May of 1994, Defendants have engaged in such tactics as: attempting to dilute Anderson's remaining stock in the corporation; attempting to privately purchase choice segments of the real estate development; assigning corporate notes to themselves, individually; pulling private consumer credit reports on Plaintiffs; and appointing their friends as "independent directors" pursuant to the Mississippi Independent Directors Statute.

Procedural Background

Plaintiffs Anderson and Hollingsworth originally filed this action as two separate cases in May of 1994. The two cases were consolidated and set for trial in October of 1997. Before trial, Plaintiffs nonsuited the case, refiling it several months later. Plaintiffs alleged several causes of action: intentional infliction of emotional distress; breach of fiduciary duty; fraud in the inducement; tortious interference with existing and prospective business; and conversion.

On January 20, 1998, Defendant, John S. Wilson, through his executor, filed a Motion for Partial Dismissal on the basis that the cause of action by Plaintiffs against Wilson did not survive his death. The trial court granted this motion on July 21, 1998. On January 20, 1998, Defendants, Rayner and Grand Oaks, filed a motion to dismiss for lack of in personam jurisdiction, and the trial court granted the motion by order entered May 25, 2000. By order entered June 23, 2000, the trial court denied Plaintiffs' Tenn.R.Civ.P. 59 motion and amended its order of dismissal by making it a final order pursuant to Tenn.R.Civ.P. 54.02.

Plaintiffs appeal and the sole issue on appeal is whether the trial court erred in dismissing the action against James W. Rayner and Grand Oaks, Inc., for lack of personal jurisdiction. Plaintiffs contend the trial court erred in granting Defendants' Motion to Dismiss because Defendants had sufficient contacts with the State of Tennessee to support the trial court's exercise of personal jurisdiction over them. We reverse the order of dismissal and hold that the trial court erred in finding it lacked personal jurisdiction over Defendants Raynor and Grand Oaks.

Analysis

The plaintiff has the burden of establishing a prima facie case that personal jurisdiction over a defendant is proper. *See Manufacturers Consolidation Service, Inc. v. Rodell*, 42 S.W.3d 846, 854 (Tenn. Ct. App. 2000). When a defendant files a motion to dismiss challenging the trial court's personal jurisdiction over him, the plaintiff must set out specific facts which demonstrate that the court has jurisdiction. *See id.* at 854-55. Where, as in the case at bar, a motion to dismiss for lack of in personam jurisdiction is decided on the basis of the parties' pleadings and affidavits, the trial court treats the procedure similarly to that of a summary judgment. *See id.* at 855 n. 5. The Tennessee Supreme Court recently addressed the issue of the certainty with which a plaintiff must establish the facts showing that a court has personal jurisdiction over a defendant in this way:

> Under the Tennessee Rules of Civil Procedure a motion to dismiss may be based on one or more of eight grounds, including lack of

personal jurisdiction and failure to state a claim on which relief can be granted. *See* Tenn. R. Civ. P. 12.02. A court either decides this motion based on the allegations contained in the pleadings or, if matters outside the pleadings - such as affidavits - are presented, the court will treat the motion as one for summary judgment as provided in Tenn. R. Civ. P. 56. *See* Tenn. R. Civ. P. 12.03.

As we have stated in the past, however, Rule 12.03 does not apply to a motion to dismiss for lack of personal jurisdiction, unless the evidence brought to the court is so conclusive that the motion may be fully and finally resolved on the merits. *See Nicholstone Book Bindery, Inc. v. Chelsea House Publishers*, 621 S.W.2d 560, 561 n. 1 (Tenn.1981) ("[S]ummary judgment procedure does not properly apply to jurisdictional issues.") (quoting 6 Moore, Federal Practice (Part 2) § 56.17(36) at 913 (1980)). Often a complete resolution of the jurisdictional issue is not possible at the beginning of litigation because not enough evidence has been developed; indeed, discovery will not have yet begun. This gives rise to a dilemma. If a court seeks to develop more evidence, by ordering discovery or an evidentiary hearing, the burden on an out-of-state defendant may in some cases be nearly as great as if the court simply ruled from the start that jurisdiction was present and allowed the litigation to proceed. But allowing a court to decide whether jurisdiction exists based entirely on the pleadings, as a court may do when confronted with one of the other grounds to dismiss listed in Rule 12.02, is hardly a better solution.

\* \* \*

Regardless of the theory on which personal jurisdiction is based, though, the necessity of adopting a middle-ground solution - between relying merely on the pleadings and postponing a decision on jurisdiction until discovery has been completed - is apparent. . . .It is clear that the plaintiff bears the ultimate burden of demonstrating that jurisdiction exists. *See McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135, 1141 (1936); *Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n*, 142 F.3d 26, 34 (1st Cir.1998). If the defendant challenges jurisdiction by filing affidavits, the plaintiff must establish a prima facie showing of jurisdiction by responding with its own affidavits and, if useful, other written evidence. *See Posner v. Essex Ins. Co. Ltd.*, 178 F.3d 1209, 1214 (11th Cir.1999); *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2nd

Cir.1999); ***OMI Holdings, Inc. v. Royal Ins. Co. of Canada***, 149 F.3d 1086, 1091 (10th Cir.1998). A court will take as true the allegations of the nonmoving party and resolve all factual disputes in its favor, ***see Posner***, 178 F.3d at 1215; ***IMO Industries, Inc. v. Kiekert AG***, 155 F.3d 254, 257 (3rd Cir.1998), but it should not credit conclusory allegations or draw farfetched inferences, ***see Massachusetts School of Law***, 142 F.3d at 34.

We find that this procedure for evaluating a defendant's motion to dismiss under Tenn. R. Civ. P. 12.02(2) is sensible and not inconsistent with any rule or case in Tennessee of which we are aware, and we therefore adopt it.

***Chenault v. Walker***, 36 S.W.3d 45, 55-56 (Tenn. 2001).

In this case, the trial court's Order Granting Defendant's Motion to Dismiss James W. Rayner and Grand Oaks, Inc. reads as follows:

This matter came on before the court for hearing on Friday, March 24, 2000, upon Defendant's Motion pursuant to Tenn. R. Civ. P. 12.02(2) and 56 to dismiss the Complaint as to James W. Rayner and Grand Oaks, Inc. on grounds that they are not subject to the *in personam* jurisdiction of this court, and, ***upon consideration of the motion, briefs, affidavits, and entire record in this case***, the court finds and concludes that the motion is well taken and is hereby granted. Therefore, James W. Rayner and Grand Oaks, Inc. are hereby dismissed with prejudice.

(emphasis added). We, therefore, consider the entire record on appeal in determining whether the trial court properly found that personal jurisdiction over Defendants Raynor and Grand Oaks was lacking.

Tennessee's long-arm statute, T.C.A. § 20-2-214 (1994), allows Tennessee courts to exercise jurisdiction to the extent the Fourteenth Amendment of the United States Constitution permits.[3] ***See,***

---

[3]That statute provides:

**§ 20-2-214. Personal service; unavailability; jurisdiction**
(a) Persons who are nonresidents of Tennessee and residents of Tennessee who are outside the state and cannot be personally served with process within the state are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from:
(1) The transaction of any business within the state;

(continued...)

*e.g., Cummins v. Contract-Mart, Inc.*, 635 F.Supp. 122, 124 (E.D. Tenn. 1986);*Rodell*, 42 S.W.2d at 855. Our task, therefore, is to determine if the exercise of personal jurisdiction over Defendants Rayner and Grand Oaks violates the Due Process Clause.

Since the United States Supreme Court adopted the "minimum contacts" analysis in *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945), and in keeping with this state's long-arm statute, Tennessee courts have developed a five-part test which serves to evaluate the contacts between a defendant and the forum state. *See Masada Investment Corp. v. Allen*, 697 S.W.2d 332, 334 (Tenn. 1985). That test evaluates: (1) the quantity of the contacts between the defendant and the forum state; (2) the nature and quality of those contacts; (3) the relationship between those contacts and the cause of action; (4) the interest of the forum state in adjudicating the dispute; and (5) the convenience of the forum state to the parties. *See id.* The end result of the *Masada* analysis is a determination of whether, through its conduct and connection to the forum state, a defendant could "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

It is difficult to ascertain the validity of Plaintiffs' allegations regarding Defendants' contacts with Tennessee, given Plaintiffs' lack of appropriate citations to the record in this case. We have often said that "this court is not under a duty to minutely search the record to verify these unsupported allegations." *Long v. Long*, 957 S.W.2d 825, 828 (Tenn. Ct. App. 1997). *See also Schoen v. J.C. Bradford & Co.*, 642 S.W.2d 420, 427 (Tenn. Ct. App. 1982). However, even if we are to take Plaintiffs' recital of some twenty-five contacts with the forum state as true, we hold the contacts to be insufficient for the purposes of finding personal jurisdiction under traditional theory.

---

[3](...continued)

(2) Any tortious act or omission within this state;

(3) The ownership or possession of any interest in property located within this state;

(4) Entering into any contract of insurance, indemnity, or guaranty covering any person, property, or risk located within this state at the time of contracting;

(5) Entering into a contract for services to be rendered or for materials to be furnished in this state;

(6) Any basis not inconsistent with the constitution of this state or of the United States;

(7) Any action of divorce, annulment or separate maintenance where the parties lived in the marital relationship within this state, notwithstanding one party's subsequent departure from this state, as to all obligations arising for alimony, custody, child support, or marital dissolution agreement, if the other party to the marital relationship continues to reside in this state.

(b) "Person," as used herein, includes corporations and all other entities which would be subject to service of process if present in this state.

(c) Any such person shall be deemed to have submitted to the jurisdiction of this state who acts in the manner above described through an agent or personal representative.

These contacts include allegations that, among other things: (1) the domicile of the majority of Grand Oaks' directors is Tennessee; (2) several of the initial formative meetings of the joint venture were held in Tennessee; (3) some of the checks involved in financing the project were written on Tennessee bank accounts and delivered in Tennessee; (4) corporate records were drafted and maintained in Tennessee; and (5) Defendant Raynor made phone calls to Tennessee.

Although we find no basis for personal jurisdiction over Defendants Raynor and Grand Oaks under the traditional "minimum contacts" analysis, we nevertheless hold that jurisdiction over these Mississippi defendants is proper under the "conspiracy theory" of personal jurisdiction. Under the conspiracy theory of personal jurisdiction, "an out-of-state defendant involved in a conspiracy who lacks sufficient 'minimum contacts' with the forum state may nevertheless be subject to jurisdiction because of a co-conspirator's contacts with the forum." *Chenault v. Walker*, 36 S.W.3d 45, 51 (Tenn. 2001). The theory, as adopted by our Supreme Court in *Chenault*, consists of four parts:

> "(1) two or more individuals conspire to do something,
>
> (2) that they could reasonably expect to lead to consequences in a particular forum, if
>
> (3) one co-conspirator commits overt acts in furtherance of the conspiracy, and
>
> (4) those acts are of a type which, if committed by a non-resident, would subject the non-resident to personal jurisdiction under the long-arm statute of the forum state,
>
> then those overt acts are attributable to the other co-conspirators, who thus become subject to personal jurisdiction in the forum, even if they have no direct contacts with the forum."

*Chenault*, 36 S.W.3d at 53 (quoting *Cawley v. Bloch*, 544 F.Supp. 133, 135 (D. Md. 1982).

In this case, Plaintiffs allege, *inter alia*, that Defendant Roberson, a Tennessee resident, conspired with Defendants Rayner and Grand Oaks to take control of the development project through fraud. Plaintiffs allege that Defendants inserted "secret language" into the stock pledge agreement in order to gain control of Hollingsworth's stock. Plaintiffs also allege that Defendants deliberately kept Plaintiffs away from a corporate meeting in which the corporation issued stock, and that Defendants lied about "corporate over-runs" and did not produce corporate records that might have clarified the corporations' financial position. Defendants deny these allegations, and deny the existence of a conspiracy to defraud Plaintiffs.

Based upon the Plaintiffs' allegations and affidavits, we hold that the existence of a conspiracy is an issue of disputed fact which must be resolved by the trial court. The trial court may,

after an evidentiary hearing, determine that no facts sustain the allegation that a conspiracy exists. If the trial court so finds, then jurisdiction over Defendants Rayner and Grand Oaks would not be proper in this case.  However, that issue is not before this Court.

Accordingly, we reverse the trial court's order of dismissal based upon lack of personal jurisdiction over Defendants Rayner and Grand Oaks.  This cause is remanded for further proceedings consistent with this opinion.  Costs of this appeal are taxed one-half to Defendants Rayner and Grand Oaks, Inc., and one-half to Plaintiffs Anderson and Hollingsworth, for which execution may issue, if necessary.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.